1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA CAMARILLO, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BALBOA THRIFT AND LOAN ASSOCIATION, a California corporation,<br><br>Defendant. | Case No.:  3:20-cv-00913-BEN-BLM<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS**<br><br>**[ECF Nos. 4, 6, 7, 8, 10]** |

## I.     INTRODUCTION

Plaintiff VERONICA CAMARILLO, individually and on behalf of others similarly situated ("Plaintiff"), brings this putative action against Defendant BALBOA THRIFT AND LOAN ASSOCIATION, a California corporation ("Defendant") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").  ECF No. 1.

Before the Court is Defendant's Motion to Compel Arbitration and Dismiss the Action, or Alternatively, Stay the Action Pending Arbitration.  ECF No. 4.  The motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 7.

After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** Defendant's Moton to Compel Arbitration, and because there are

no remaining non-arbitrable claims, dismisses Plaintiff's claim *with prejudice*.

## II.    BACKGROUND

### A.    Statement of Facts[1]

On February 21, 2015, Plaintiff entered into a Retail Installment Sale Contract - Simple Finance Charge (With Arbitration Provision) (the "RISC") with Yucca Valley Chrysler Center for the purchase and financing of a 2014 Fiat 500 vehicle (the "Vehicle"). Motion, ECF No. 4 ("Mot.") at 5[2]:18-20; *see also* Complaint, ECF No. 1 ("Compl.") at 5, ¶ 24; Opposition, ECF No. 6 ("Oppo.") at 9:18-20.  The RISC required Plaintiff to make monthly payments of $395.07 until February 23, 2021, as part of her agreement to finance the purchase of her **$16,900.00** Vehicle by agreeing to pay nineteen percent (19%) interest for a total amount owed at the end of the RISC term of **$28,945.04**.  Mot. at 20.  Page 2 of the RISC contained a section entitled "Agreement to Arbitration," which said, "By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of the contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action."  Mot. at 21.  Plaintiff signed this provision.  *Id.*  The actual provision itself requires arbitration of any dispute arising under the Agreement as follows:

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR**
**LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS

---

[1]    The majority of the facts set forth are taken from the operative complaint, and for purposes of ruling on Defendant's motion to compel arbitration and motion to dismiss, the Court assumes the truth of the allegations pled and liberally construes all plausible allegations in favor of the non-moving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Additional facts were also taken from the moving papers.  ECF Nos. 4, 6, 8.

[2]    Unless otherwise indicated, all page number references are to the ECF generated page number contained in the header of each ECF-filed document.

CLAIM YOU MAY HAVE AGAINST US INCLUDING BUT NOT LIMITED TO ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

**Any claim** or dispute, **whether in contract**, **tort**, **statute**, or otherwise (including the interpretation and scope of this arbitration provision, and the arbitrability of the claim or dispute), **between you** and **us** or our employees, agents, successors **or assigns**, <u>which arises out of</u> or **relates to your** *credit application*, *purchase*, or **condition of this vehicle**, *this contract* or *any resulting* transaction or *relationship* (including any relationship with third parties who do not sign this contract) **shall**, **at** your or **our election**, **be resolved by neutral**, **binding arbitration** and **not by a court action**.

. . . .

The arbitrator shall apply governing substantive law and the applicable statute of limitations.  The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where the contract was executed . . . Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.) and not by any state law concerning arbitration . . .

You and **we retain the right to seek remedies in small claims court for** dispute or **claims within the court's jurisdiction**, unless such action is transferred, removed, or appealed to a different court.  **Neither you nor we waive the right to arbitrate by using self-help remedies**, **such as repossession**, or **by filing an action** to recover the vehicle, **to recover a deficiency balance**, or for individual injunctive relief.  Any court having jurisdiction may enter judgment on the arbitrator's award. <u>**This Arbitration Provision shall survive any termination**</u>, <u>**payoff**</u> or <u>**transfer of this contract**</u>.  . . .  If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been

-3-

made, the remainder of this Arbitration Provision shall be unenforceable.

(the "Arbitration Provision").  Mot. at 5:24-8:20 (emphasis added); *see also id.* at 25.

On March 3, 2015, Yucca Valley Chrysler Center assigned the RISC to Defendant, at which time Defendant carried the loan to Plaintiff in the sum of **$16,900.36**.  Mot. at 8:22-23; Oppo. at 9:20-21.

From April 10, 2015 to November 12, 2018, or more than three years, Plaintiff made payments on the loan.  Defendants' Reply Brief in Support of Motion to Compel Arbitration and Dismiss, or Alternatively, Stay the Action, ECF No. 8 ("Reply") at 10:7-8.  However, according to the RISC, these payments were supposed to continue through February 23, 2021, meaning Plaintiff still owed about 27 months of payment when she ceased making payments in November 2018.  *Id.* at 10:8-11.

In January 2019, Plaintiff voluntarily surrendered the Vehicle to Defendant.  Reply at 27, Exhibit D; *see also* Declaration of Veronica Camarillo in Support of Plaintiff's Opposition to Motion to Compel Arbitration, ECF No. 6-1 ("Camarillo Decl.") at 2, ¶ 5.  Plaintiff alleges that by surrendering the Vehicle, her "account" with Defendant closed, and she no longer owed a balance due.   Compl. at 5, ¶ 26; Camarillo Decl. at 2, ¶ 6.

On April 5, 2019, the Vehicle was sold at a private sale.  Reply at 27, Exhibit D.  Shortly thereafter, on April 23, 2019, Defendant sent a Notice of Deficiency and Demand for Payment to Plaintiff, notifying her that she owed a deficiency balance of **$10,674.96**, which represented the balance due after Defendant had credited the proceeds from the sale of the Vehicle to Plaintiff's account.  Reply at 10:12-15.  This letter claimed that Plaintiff owed the following amounts:

| Item: | Amount: |
|---|---|
| **Outstanding Principal & Interest Owed:** | $10,748.80 |
| **(Reduced by Proceeds of Sale):** | ($1,800.00) |
| **Late Charges:** | $345.00 |
| **Costs/Fees:** | $1,383.16 |
| **TOTAL:** | **$10,674.96** |

Reply at 27, Exhibit D.

On May 10, 2019, Plaintiff sent Defendant a letter acknowledging receipt of Defendant's notice but claiming the Vehicle had been inoperable since December 6, 2016, so she stopped making payments because she was no longer able to afford to continue to put money into repairs while also making payments on the loan. Reply at 10:16-17; *see also id.* at 29 (attaching Plaintiff's letter as Exhibit E).

On July 29, 2019, Defendant "pulled" her Experian credit report. Reply at 10:19-20; Compl. at 5, ¶ 27. When Plaintiff reviewed her July 31, 2019 credit report, she discovered this unauthorized "hard" inquiry. Compl. at 5, ¶ 28.

On September 17, 2019, Defendant filed a small claims complaint against Plaintiff. Reply at 10:21-22; *see also id.* at 32-34 (attaching the complaint as Exhibit F).

### B. Procedural History

On May 15, 2020, Plaintiff filed this lawsuit against Defendant, alleging one claim for relief for violation of the FCRA. *See generally* Compl. On May 29, 2020, Plaintiff served Defendant by substituted service, ECF No. 3, meaning a responsive pleading was due by June 19, 2020, *see* FED. R. CIV. P. 12(a)(1)(A)(i) (providing that a defendant must file a responsive pleading "within 21 days after being served with the summons and complaint").[3] On July 20, 2020, Defendant filed the instant motion. Mot., ECF No. 4. On August 25, 2020, Plaintiff filed a response in opposition to the motion. Oppo., ECF No. 6. On September 1, 2020, Defendants filed a reply brief. Reply, ECF No. 8. That same day, Plaintiff filed evidentiary rejections to Defendant's reply brief. ECF No. 10.

### III. LEGAL STANDARD

### A. Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration

---

[3] Although Defendant's responsive pleading appears to have been untimely if the date of service is correct, Defendant's Motion to Compel Arbitration raises concerns as to the validity of service. *See* Mot. at 27 (noting in a July 13, 2020 e-mail that Defendant did not believe it had been formally served yet); 30 (inquiring about when the complaint was served). As such, the Court disregards any potential untimeliness as to the responsive pleading, particularly given Plaintiff's failure to raise the issue.

agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. "Once the court has determined that an arbitration agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine [1] whether a valid arbitration agreement exists and [2] whether the scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

## B. <u>Motion to Dismiss Under Rule 12(b)(1)</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)") allows a defendant to seek dismissal of a claim or lawsuit by asserting the defense of lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "If the court determines at any time that it lacks subject matter-jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). "Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction." *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 871 (S.D. Cal. 2019). As a result, the plaintiff, as "[t]he party asserting jurisdiction[,] bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction." *DRAM*, 546 F.3d at 984.

## C. <u>Motion to Stay</u>

Where a plaintiff files suit "in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for . . . arbitration, the court in which such suit is pending, upon being satisfied that the issue . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration." 9 U.S.C. § 3. A court's power to stay proceedings is incidental to the inherent power to

control the disposition of its cases in the interests of efficiency and fairness to the court, counsel, and litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). A stay may be granted pending the outcome of other legal proceedings related to the case in the interests of judicial economy. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). Discretion to stay a case is appropriately exercised when the resolution of another matter will have a direct impact on the issues before the court, thereby substantially simplifying the issues presented. *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). In determining whether a stay is appropriate, a district court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. "[I]f there is even a fair possibility that the stay … will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.   **DISCUSSION**

Defendant argues that the Court should compel arbitration because Plaintiff signed a RISC that included an arbitration provision which covers her federal claim arising under the FCRA. Mot. at 4:4-9. Plaintiff responds that her FCRA claim arises from Defendant's unlawful request and review of a credit report, not the sale of the Vehicle, and as such, her claim is not subject to arbitration. Oppo. at 9:2-5. She further contends that even if Defendant relies on an ostensible outstanding debt owed on the Vehicle as justification for pulling the credit report, Defendant failed to prove such a debt exists. *Id.* at 9:5-7. As a result, Defendant fails to show the resolution of Plaintiff's FCRA claim requires the Court to rely on or refer to the RISC, so the Defendant has not carried its burden of showing a valid agreement to arbitrate the dispute at issue, and the Court should deny the motion. *Id.* at 9:13-16. In response, Defendant argues that FCRA's claim necessarily implicates the parties' relationship because if Defendant qualifies as a creditor of Plaintiff, the FCRA authorizes its act of pulling her credit report as a matter of law. *See generally* Reply. Because the Arbitration Provision requires arbitration of any dispute arising out of the

parties' relationship, Defendant contends the Court must order the parties to arbitration. *Id.* Defendant also contends in its Reply Brief that even the matter of whether the parties' dispute falls within the scope of the Arbitration Provision is subject to determination by the arbitrator, not the Court.  Reply at 5:5-8.

The Arbitration Provision between Plaintiff and Defendant is part of the RISC signed by Plaintiff on February 21, 2015.  Mot. at 5:18-20; *see also* Compl. at 5, ¶ 24.  It states that it covers "[a]ny . . . dispute . . . in . . . statute . . . between you and . . . our . . . assigns, which arises out of . . . this contract or any resulting . . . relationship (including any relationship with third parties who do not sign this contract)."  Mot. at 23, Ex. A.  The original lender assigned the RISC to Defendant.  Mot. at 8:22-23; Oppo. at 9:20-21. Plaintiff's dispute with Defendant arises out of a statute (the FCRA) and exists between herself and the original lender's assignee,[4] Defendant, and relates to the resulting creditor-debtor relationship arising out of the RISC.  As such, as outlined below, the Court finds the Arbitration Provision in the RISC at constitutes a valid agreement to arbitrate and is unpersuaded by Plaintiff's arguments that the Arbitration Provision is unconscionable.

## A.  <u>Jurisdiction</u>

The FAA allows a party aggrieved by another party's failure to arbitrate pursuant to a valid arbitration agreement to bring either an original petition to arbitrate, or where an action has already been filed, a motion to compel arbitration "in any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil

---

[4]  Although not directly raised in Plaintiff's Opposition, for the avoidance of doubt, "[t]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009) (looking to California contract law to determine whether Toyota, as a nonsignatory to the arbitration agreement, could compel arbitration)).  Because California law allows an assignee to step into the shoes of the assignor and assume all rights, privileges, and liabilities, Defendant may enforce the Arbitration Agreement. *See* CAL. CIV. CODE §§ 1457; 1458.

action . . . of the subject matter arising out of the controversy between the parties." 9 U.S.C. § 4.  Defendant argues that but for the requirement to arbitrate, Plaintiff's FCRA claim arises under federal law, and as a result, subject matter jurisdiction is proper under 28 U.S.C. § 1331.  Mot. at 10:27-18.  Under 28 U.S.C. § 1331, "[t]he district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Plaintiff filed suit under a federal law (i.e., the FCRA), which provides that where a consumer brings an action to enforce liability under its provisions, he or she may bring the suit "in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction." 15 U.S.C. § 1681p. Thus, this Court, as the court possessing jurisdiction over the underlying controversy, has jurisdiction to determine this motion.

## B. Federal Arbitration Act

The FAA provides that once a defendant files a motion to compel arbitration, a district court must "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not" at issue, must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.  It "reflects both a 'liberal federal policy favoring arbitration' . . . and the 'fundamental principle that arbitration is a matter of contract.'"  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  The district court's role in ruling on a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists[,] and if it does, (2) whether the agreement encompasses the dispute at issue." *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020) (applying California contract law).  Only if the court answers both questions in the affirmative will the FAA require the Court "to enforce the terms of the arbitration agreement in accordance with its terms." *Id.* The Supreme Court has reminded that "courts should order arbitration of a dispute only where the court is satisfied that neither [1] the formation of the parties' arbitration agreement *nor* [2] (absent a valid provision specifically committing such disputes to an

arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original).

In this case, Defendant argues that in order for the Court to grant its Motion, it need only "assert: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) interstate or foreign commerce; and (4) the opposing party's failure or refusal to arbitrate the dispute." Mot. at 10:1-5. Plaintiff responds that "Defendant's motion should be denied because: (a) Plaintiff's FCRA claim does not arise out of or related [sic] to the parties' former purchase agreement" and "(b) expanding the scope of the arbitration to include the FCRA claims would be unconscionable." Oppo. at 14:3-6. As outlined below, the Court finds the RISC requires the parties to arbitrate their dispute, including the gateway issue of whether the Arbitration Provision covers the dispute at issue.

### 1. *Governing Law*

As a preliminary matter, federal substantive law governs the scope of an arbitration agreement. *Kramer*, 705 F.3d at 1126. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1131 (9th Cir. 2000). State contract law, on the other hand, governs issues pertaining to the validity, revocability, and enforceability of an agreement to arbitrate. *See, e.g.*, *Revitch*, 977 F.3d at 716-17 (applying California contract law to a wireless services agreement because the agreement's choice-of-law provision states that the contract is governed by the law of the state in which the customer's billing address is located, and the customer resided in California).

The RISC itself aligns with the law, providing that "[f]ederal and California law apply to this contract." Mot. at 22. The arbitration provision of the RISC elaborates that "[a]ny arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.) and not by any state law concerning arbitration."

Mot. at 5:24-8:20; *see also id.* at 25.  Thus, the Court applies federal substantive law to the scope of the RISC, and California contract law to the enforceability of the agreement itself.

## 2.   *Plaintiff Signed a Valid Agreement to Arbitrate*

Section 2 of the FAA governs the enforcement of agreements to arbitrate and provides that a provision to settle by arbitration a controversy arising out of a contract covering a transaction involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also* 9 U.S.C. § 1 (defining "commerce" as "commerce among the several States").  The FAA's "savings clause" allows a party to challenge an arbitration agreement based on any state law contract defenses, such as fraud, mistake, duress, or unconscionability.  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996).

"Under California law, a contract is formed when there are (1) parties capable of contracting, (2) mutual consent, (3) a lawful object, and (4) sufficient cause or consideration."  *Grimes v. New Century Mortg. Corp.*, 340 F.3d 1007, 1011 (9th Cir. 2003) (McKeown, J., dissenting) (citing CAL. CIV. CODE § 1550).  "The consent of the parties to a contract must be: (1) [f]ree; (2) [m]utual; and, (3) [c]ommunicated by each to the other."  CAL. CIV. CODE § 1565.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Courts determine mutual consent and the intention of the parties "from the written terms of the contract alone, so long as the contract language is clear and explicit and does not lead to absurd results."  *Revitch*, 977 F.3d at 717 (internal quotations omitted); *see also* CAL. CIV. CODE §§ 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."), 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.").

In this case, neither party contends that (1) they lacked the capability to contract, (2)

the RISC[5] or Arbitration Provision lacked a lawful object, or (3) the RISC or Arbitration Provision lacked consideration.  Rather, as part of her argument that there is no valid agreement to arbitrate, Plaintiff advances two arguments: First, she argues that her FCRA claim does not arise out of the alleged relationship between the parties, and is, therefore, not covered by the Arbitration Provision.  Oppo. at 14:7-9.  Second, Plaintiff contends that expanding the scope of the arbitration agreement to add the FCRA claim that arose after the account was closed, and the Vehicle was surrendered would be unconscionable.  Oppo. at 20:24-27.  Because the first argument predominantly pertains to whether Plaintiff's claim falls within the scope of the Arbitration Provision rather than whether the agreement itself is valid, the Court defers addressing that issue until it addresses whether Plaintiff's claim is covered by the Arbitration Provision.  As to mutual consent, Plaintiff argues somewhat paradoxically not that the RISC or its Arbitration Provision are unconscionable or that she did not consent to their terms, but that if the Court interprets them as covering the FCRA claim, it would be unconscionable.  Oppo. at 20:24-27.  Thus, Plaintiff contends Defendant

---

[5]     As a preliminary matter, in ruling on this motion, the Court takes judicial notice of the RISC under the incorporation by reference doctrine as the RISC, which covers Defendant's loan to Plaintiff, is alleged in the complaint and is central to Plaintiff's FCRA claim.  *Compare* Compl. at 5, ¶¶ 25, 27 ("In or around February 2015, Plaintiff obtained an automobile loan from Defendant," and "on July 29, 2019, Defendant pulled Plaintiff's Experian credit report") *with Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005) (extending incorporation by reference doctrine to situations "in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint").  The court may treat a document incorporated by reference as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  However, to the extent a document incorporated by reference contradicts the allegations of a complaint, the court "need not accept as true allegations contradicting documents that are referenced in the complaint."  *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007-08 (9th Cir. 2015).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

has failed to show a valid agreement to arbitration.  However, the Court finds Plaintiff fails to explain how or why the RISC does not constitute a valid agreement to arbitrate.

a.    *The Arbitration Provision Is Not Unconscionable*

Under California law, a court may refuse to enforce a provision of a contract if it finds the provision at issue was "unconscionable at the time it was made."  CAL. CIV. CODE § 1670.5(a).  Courts may find a contract as a whole "or any clause of the contract" to be unconscionable.  *Id.*  "The party asserting that a contractual provision is unconscionable bears the burden of proof."  *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023-28 (9th Cir. 2016) (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015)).  "Unconscionability has 'both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'"  *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910).  "Both procedural and substantive unconscionability must be present in order for a clause to be unconscionable, but they need not necessarily be present to the same degree."  *Id.* (citing *Armendariz v. Found. Health Psychcare Services*, 24 Cal. 4th 83, 114 (2000)).  Although California courts characterize "substantive unconscionability" in various ways, "[a]ll of these formulations point to the central idea that unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' but with terms that are 'unreasonably favorable to the more powerful party.'"  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013).

In the present case, Plaintiff never argues that the terms of the RISC were substantively or procedurally unconscionable.  Reply at 13:11-12.  To the extent she may try to advance such arguments now, the Court would likely view them as waived as having not been raised in Plaintiff's Opposition.  *See, e.g.*, *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (noting that "the plaintiffs did not raise that argument to the district court in their . . . opposition to the defendants' motion for summary judgment, so the argument was waived.").  Rather, Plaintiff argues that expanding the scope of the Arbitration Provision to include the FCRA claims that arose after the account was closed and the Vehicle was surrendered would be unconscionable.  Oppo. at 20:24-28.  Plaintiff

argues that "[e]ven if Defendant seeks to argue that the hard pull of Plaintiff's credit somehow related to the parties' relationship, where parties no longer had a relationship and the vehicle was surrendered, allowing Defendant to always arbitrate all claims between the parties from now on until the end of times was never the goal of the contract." Oppo. at 22:10-14. Thus, Plaintiff argues that it would be the Court's act of "expanding the arbitration clause to encompass unrelated claims [that] would render the clause unconscionable." *Id.* at 22:17-18. However, as Defendant points out "the arbitration provision makes clear that '[t]his Arbitration Provision shall survive any termination, payoff or transfer of this contract." Reply at 13:19-21 (citing Mot. at 21, 23). Further, the Court need not "expand" the provision as the provision already requires, at a minimum, arbitration of the gateway issue of whether Plaintiff's claims are subject to arbitration.

b.   *The Parties Mutually Consented to Arbitration*

Plaintiff correctly notes that "there is no contract until there is mutual consent of the parties." Oppo. at 12:5-8. However, the Court finds mutual consent exists here for the below reasons.

First, Page 2 of the RISC contained a section entitled "Agreement to Arbitration," which said, "By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of the contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action." Mot. at 21. Plaintiff signed this provision, and as Defendant correctly points out, "[s]he does *not* claim that there was any duress, coercion, or fraud in the signing of the agreement" or "that the agreement is an adhesion contract." Reply at 13:7-9. She also does not contend that it is not her signature on the document. *See generally* Oppo. As a result, Plaintiff consented to arbitrate, and the Court finds any arguments to the contrary unavailing to the extent the Court finds the claims at issue covered by the Arbitration Provision.

Second, without ruling on whether Plaintiff's FCRA claims are, in fact, within the scope of the Arbitration Provision, the Court finds that if they are encompassed, any argument by Plaintiff that such an outcome was not foreseeable is unreasonable and fails

-14-

to show a lack of mutual consent.  Plaintiff argues in her declaration submitted in support of her opposition that (1) she never agreed to arbitrate claims against Defendant pertaining to any credit pull after she surrendered the Vehicle and (2) "it is unfair and unjust to enforce an arbitration clause to a claim that arose after the surrender of the vehicle because the contract with Chrysler only covers the sale of the vehicle, vehicle condition, and the original credit application."   Camarillo Decl. at 3, ¶¶ 15-16.   Plaintiff asserts that "Defendant does not explain . . . how claims under the FCRA could possibly have been considered a term of obligation of the contract at issue; at the time the RISC was executed with Chrysler Center, Plaintiff could not reasonably have intended to agree to arbitrate FCRA claims that would arise <u>after Plaintiff's surrender of the vehicle</u>."  Oppo. at 13:11-18 (original emphasis) (citing *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862 (2016) (providing that "an offeree, regardless of apparent manifestation of his consent is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious")); *but see* Mot. at 23 ("This Arbitration Provision shall survive any termination, payoff or transfer of this contract"). In other words, Plaintiff's position is not that she did not consent to the RISC but rather that she did not expect that if she defaulted on the loan and surrendered the Vehicle while still owing a balance, the RISC would then both allow her creditor to pull her credit report as well as prevent her for suing under the FCRA when the creditor did so.  Yet, the Court finds that a reasonable person should have expected this outcome because (1) the RISC expressly stated that if a balance remained after the Vehicle sold, the debtor would still owe the creditor,[6] and (2) as Plaintiff admits, Compl. at 5, ¶ 24, the law authorizes a creditor to pull the credit report of a debtor.

---

[6]     To the extent Plaintiff may claim the agreement to arbitrate lacks mutual consent because she was unaware of this provision in the RISC as she did not read it, such an argument would fail to provide her with a defense. *See, e.g.*, *Conyer v. Hula Media Servs., LLC*, 53 Cal. App. 5th 1189, 1197 (2020), *review filed* (Oct. 5, 2020) (noting that "[i]t has long been the rule in California that a party is bound by a contract even if he did not read the contract before signing it").

For instance, Plaintiff's Complaint and declaration both state that her account closed upon surrendering the Vehicle. Compl. at 5, ¶ 26; Camarillo Decl. at 2, ¶ 6. She elaborates stating that she disputes owing any debt after surrendering her Vehicle. Camarillo Decl. at 2, ¶¶ 7-8. However, under the section entitled "IF YOU PAY LATE OR BREAK YOUR PROMISES," the RISC expressly stated that if the debtor paid late, she would owe late charges, and "[i]f the money from the sale [of the Vehicle] is not enough to pay the amount you owe, you must pay the rest to us." Mot. at 22, § 2(f) of the RISC. Thus, Plaintiff's contention that she did not believe she still owed Defendant after surrendering the Vehicle is untenable based on the plain language of the RISC. *Compare* Compl. at 5, ¶ 26 (alleging Plaintiff "no longer had <u>any</u> account with Defendant" after surrendering the Vehicle) *with Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."). Thus, "[n]ot that foreseeability is a relevant consideration, but the court notes that it was certainly foreseeable (if not known) to [the debtor] that as a result of her obtaining credit with [the creditor] it would report her credit information." *Mann v. Equifax Info. Servs., LLC*, No. 12-CV-14097, 2013 WL 3814257, at *9 (E.D. Mich. July 22, 2013).

Given no other elements essential to contract formation were raised by Plaintiff and the Court finds mutual consent existed, the RISC and the Arbitration Provision contained within it are both valid, enforceable contracts.

### 3.   *The Arbitration Provision Covers Plaintiff's FCRA Claim*

Defendant argues that Plaintiff's one claim for alleged FCRA violations plainly represents "a 'claim or dispute' involving a federal 'statute' that 'arises out of or relates to . . . this contract or any resulting transaction or relationship.'" Mot. at 12:20-23. Plaintiff responds that "Plaintiff's FCRA claim arises from Defendant's unlawful request for and review of a credit report, not the sale of the vehicle." Oppo. at 9:2-55. She argues that (1) "[t]o the extent it relies on an ostensible debt owed on the vehicle as justification for the inquiry, Defendant has failed to show any such debt exists," *id.* at 9:5-7, and (2) "[t]he

credit inquiry did not pertain to the vehicle, condition of the vehicle, or Plaintiff's credit application (since Plaintiff no longer sought credit),"[7] *id.* at 20:14-16.  However, Defendant replies by noting that "Plaintiff conspicuously omits that the arbitration language includes a 'claim' 'arising from or relating to' the '*purchase*' of the vehicle or 'any resulting transaction or relationship' with 'a third party' like BTLA."  Reply at 8:23-9:4 (citing *Crooks* v. *Wells Fargo Bank, NA.,* 312 F. Supp. 3d 932, 937-38 (S.D. Cal. 2018) (Sabraw, J.) (holding that the broad scope of an identical arbitration provision contained within another RISC did not foreclose the possibility that the plaintiff s FCRA claim "relates to the relationship of the parties giving rise to the arbitration provision.").

The RISC's Arbitration Provision covers "[a]ny claim or dispute, whether in contract, tort, statute (including the interpretation and scope of this arbitration provision, and the arbitrability of the claim or dispute), between you and us or our . . . or assigns, which arises out of or relates to your credit application, purchase, or condition of this vehicle, this contract or any resulting transaction or relationship (including any relationship with third parties who do not sign this contract)."  Thus, the Arbitration Provision did not just cover "the sale of the vehicle, vehicle condition, and the original credit application," as Plaintiff contends.  Camarillo Decl. at 3, ¶¶ 15-16.  Plaintiff's current FCRA claim relates to (1) outstanding amounts owed resulting from her purchase of the Vehicle, (2) amounts owed under the RISC, and (3) the resulting creditor-debtor relationship between her and Defendant, as the assignor of the seller of the Vehicle.  This is because by Plaintiff's

---

[7]     Plaintiff contends that any deficiency balance that Plaintiff may have "is separate from Defendant's right or authority to pull Plaintiff's credit."  Oppo. at 14:10-18.  Plaintiff argues that "as a general rule, where the contract at issue has expired, the parties are released from their respective contractual obligations and any dispute between them cannot be said to arise under the contract."  Oppo. at 14:27-15:1-2 (citing *Poore v. Simpson Paper Co.*, 566 F.3d 922, 927 (9th Cir. 2009)) (internal quotations omitted).  However, this argument does not apply here because Plaintiff's contract had not, in fact, expired.  Not only was the loan maturity date February 23, 2021, but pursuant to its terms, it expired only when Plaintiff repaid the amounts owed, including any deficiency.  Mot. at 21-23.

own admission,[8] residual amounts owed defeat her entire FCRA claim.  *See, e.g.*, Compl. at 5, ¶ 24 ("Under the FCRA, companies are permitted to pull their customers credit reports with account[9] review inquiries if the customer has an account with that company"); *see also id.* at 5, ¶ 25 ("In or around February 2015, Plaintiff obtained an automobile loan from Defendant").   However, as analyzed below, although the Court finds Plaintiff's FCRA claim involves interstate commerce, it lacks the ability to determine whether the FCRA falls within the scope of the Arbitration Provision as the Arbitration Provision vests the arbitrator with the authority to make that determination.

a.   *Plaintiff's Claim Involves Interstate Commerce*

As an initial matter, for the Court to compel arbitration under the FAA, Plaintiff's FCRA claim must pertain to interstate commerce.  The Arbitration Provision explicitly states that any arbitration will be governed by the FAA and not by any state law concerning arbitration.  Mot. at 14:2-4; *see also* ECF No. 4 at 23.  Subject to certain exceptions inapplicable here, the FAA "governs arbitration agreements in contracts involving interstate commerce."  *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058-60 (9th Cir. 2020) (applying Arizona contract law).  Section 1 of the FAA defines "commerce" as "commerce among the several States."  9 U.S.C. § 1.

In *Hamby* v. *Power Toyota Irvine,* No. 11CV0544-BTM (BGS), 2012 WL 13036860, *1-2 (S.D. Cal. Mar. 22, 2012) (Moskowitz, J.), another court in this district

---

[8]   To the extent Plaintiff may later attempt to argue that the FCRA does not authorize a creditor to pull the credit report of a consumer who has an account with the creditor, the doctrine of judicial estoppel would bar Plaintiff from attempting to assert a position contrary to this concession in her complaint.  *Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*, 149 F. Supp. 3d 1188, 1204 (E.D. Cal. 2015).  The doctrine of judicial estoppel serves to "protect the integrity of the judicial process by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).

[9]   The FCRA defines an "account" as including an "asset account . . . established primarily for personal, family, or household purposes."  15 U.S.C. § 1681b(r)(4); 15 U.S.C. § 1693a(2).

held that a similar retail sales contract for the purchase and financing of an automobile affects interstate commerce and granted the defendant's motion to compel arbitration. The *Hamby* plaintiff filed suit, alleging violations of, *inter alia*, the Rosenthal Fair Debt Collection Practices Act, arising out of the extension of credit from a car dealership in connection with the sale of a vehicle. *Id.* at *1. Like Plaintiff here, the plaintiff alleged that "one or more adverse actions were taken regarding his credit application." *Id.* Like Defendant, the defendant moved to compel arbitration. *Id.* at *1-2. The court cited to the Supreme Court case of *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003), which made clear that "[n]o elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause." *Hamby*, 2012 WL 13036860, at *6. The *Hamby* court reasoned that because commercial lending necessarily included automobile lending, the RISC at issue in that case involved interstate commerce. *Id.*

Defendant argues that "the financing of plaintiff's automobile, and BLTA's pulling of her credit report, involved interstate commerce." Mot. at 14:10-11. Plaintiff responds that the case does not involve interstate commerce because it pertained to Defendant's actions with respect to the plaintiff's credit report, not the sale of the Vehicle, which would implicate the Arbitration Provision. Oppo. at 13:6-18. However, just as the *Hamby* court determined that the case involved interstate commerce, 2012 WL 13036860, *1-2, this Court likewise concludes this case involves interstate commerce, such that the Court must enforce the RISC's Arbitration Provision.

b.   *The Arbitrator Must Determine the Gateway Issue of Whether Plaintiff's Claim Falls Within the Scope of the Arbitration Provision*

In its Reply Brief, Defendant raises for the first time its request that the arbitrator, not the Court, determine whether Plaintiff's claim is subject to arbitration. Reply at 5:17-7:27. In response, Plaintiff filed Evidentiary Objections arguing that raises this new argument requesting relief that Defendant failed to request in its original motion, and as such, the Court should decline consideration of this argument. ECF No. 10 at 3:14-4:4.

-19-

A moving party may not raise new arguments in a reply brief. *See*, *e.g.*, *Coos Cty. Bd. of Cty. Comm'rs v. Kempthorne*, 531 F.3d 792, 812, n. 16 (9th Cir. 2008) ("The general rule is that [litigants] cannot raise a new issue for the first time in their reply briefs."); *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) (noting that "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers"); *see also Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 894-95 (1990). Thus, the Court has the discretion to reject and refuse to consider such improper arguments. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). In this case, Defendant failed to request that the arbitrator decide whether Plaintiff's claims are subject to arbitration under the Arbitration Agreement in the original motion. Defendant raised this argument for the first time in its Reply Brief by arguing that it was raised in response to Plaintiff's argument that the Court should decide whether Plaintiff's claim is subject to arbitration. Reply at 5:21-23. Regardless of whether Defendant raised the issue in the original motion, the Court must decide whether to compel arbitration based on the facts and law of this case.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent–A–Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). An arbitration provision expressly delegates such gateway issues to the arbitrator where "the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "Such [c]lear and unmistakable evidence of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (citations and internal quotation marks omitted). The Ninth Circuit has indicated "language delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (internal quotations omitted). Here, the language of

-20-

the Arbitration Provision evidences the parties' clear and unmistakable intent to delegate the threshold questions of arbitrability to an arbitrator.  It provides, in part, that "[a]ny claim or dispute, . . . (including the interpretation and the scope of this arbitration provision, and the arbitrability of the claim or dispute), . . . shall . . . be resolved by neutral, binding arbitration and not by a court action."  Mot. at 6:16-25.  Based on the language of the Arbitration Provision, the Court finds the parties agreed to arbitrate the gateway issues, including whether Plaintiff's FCRA claim is within the scope of the Arbitration Provision.  *See, e.g.*, *Crooks*, 312 F. Supp. 3d at 937-38 ("To respect the province of the arbitrator, no opinion is expressed on whether the FCRA claim falls within the scope of the arbitration provision."); *see also Gadomski*, 281 F.Supp.3d at 1020 (holding parties agreed to arbitrate gateway issues because the arbitration agreement provides "'[a] claim may include, but shall not be limited to, *the issue of whether any particular claim must be submitted to arbitration*.'").

In *Crooks*, 312 F. Supp. 3d at 938-39 and *Gadomski v. Wells Fargo Bank N.A.*, 281 F. Supp. 3d 1015, 1016-18 (E.D. Cal. 2018), the plaintiffs[10] entered into a credit agreement with a lender,[11] defaulted on their debts, filed for Chapter 7 bankruptcy, received a discharge, and after receiving their discharge, sued the defendant creditors for violations under the FCRA.  In both cases, the courts (1) held that the issue of whether the disputes should be arbitrated should be decided by the arbitrator, not the Court; (2) granted the defendants' motions to compel; and (3) dismissed or stayed the cases because there were

---

[10]   In both cases, the plaintiffs were represented by the same law firm, Kazerouni Law Group, APC, which also represents Plaintiff in this case.

[11]   In *Gadomski*, the plaintiff signed a credit card application containing an arbitration provision with the defendant and alleged the defendant caused inaccurate information to be reported in her credit report after she received a discharge of the debt.  281 F. Supp. 3d at 1017.  Meanwhile, in *Crooks*, the plaintiff, like Plaintiff here, purchased a vehicle and signed a RISC with the dealership, which contained an arbitration provision, and the seller's rights were later assigned to the defendant.  312 F. Supp. 3d at 935.  The *Crooks* plaintiff, also like Plaintiff here, alleged that after the discharge, the defendant "submitted an unauthorized account review credit inquiry to Equifax."  *Id.* at 935.

no remaining claims that were not subject to arbitration. *Gadomski*, 281 F. Supp. 3d at 1020-21 (holding that "whether Plaintiff's claims arising under FCRA and CCCRAA are within the scope of the Agreement must be decided by the arbitrator"); *Crooks*, 312 F. Supp. 3d at 935, 938-39 (staying the case to allow the arbitrator to decide the questions of arbitrability but requiring that "[w]ithin 14 days of the completion of the arbitration proceedings, the parties shall jointly submit a report advising the Court of the outcome of the arbitration, and a request to dismiss the case or vacate the stay.").  In both cases, the courts reasoned that even though the debts at issue had been discharged (unlike the present case), the discharge of the debts did not render an otherwise valid arbitration agreement unenforceable, especially where the agreement explicitly provided that it survived "any termination, payoff or transfer of this contract." *Crooks*, 312 F. Supp. 3d at 935, 938; *Gadomski*, 281 F.Supp.3d at 1019; *see also* Mot. at 25 (providing that "[t]his Arbitration Provision shall survive any termination, payoff or transfers of this contract").

Defendant also argues that "the arbitration provision . . . is a standard form that is used for the purchase and financing of a vehicle from a dealership."  Reply at 6:22-23. Defendant points out that "there are opinions involving the same language as the arbitration provision in the present case that concern FCRA claims," and "[i]n each case, the Court held that the arbitrator was required to determine whether plaintiff's claim is arbitrable." Reply at 6:24-26.  As Defendant notes, in *Rumbough v. Courtesy Toyota*, No. 615CV869ORL41GJK, 2016 WL 4134584, at *1 (M.D. Fla. Apr. 14, 2016), *Perei v. Arrigo DCJ Sawgrass, Inc.*, No. 18-CV-60091, 2018 WL 1182570, at *1 (S.D. Fla. Mar. 7, 2018), and *Johnson v. Santander Consumer USA Inc.*, No. CV-15-00774-PHX-DLR, 2015 WL 7567483, at *1 (D. Ariz. Nov. 25, 2015), the courts granted the defendants' motions to compel arbitration and stayed the proceedings, pending arbitration.  In all three cases, the plaintiffs sued the defendant for violations of, *inter alia*, the FCRA after purchasing vehicles from lenders and signing a RISC containing identical (in the cases of *Rumbough* and *Perei*) or near identical arbitration provisions to the one at issue in this case, which were later assigned to third-parties. *Rumbough*, 2016 WL 4134584, at *1; *Perei*,

2018 WL 1182570, at *1; *Johnson*, 2015 WL 7567483, at *1.  The defendants in all three cases then argued that the plaintiff's claims were subject to arbitration due to the provision contained in the RISC.  *Rumbough*, 2016 WL 4134584, at *1; *Perei*, 2018 WL 1182570, at *1; *Johnson*, 2015 WL 7567483, at *1.  The courts determined that the issue of whether the plaintiff's claims under the FCRA fell within the purview of the arbitration provision should be determined by the arbitrator.  *Rumbough*, 2016 WL 4134584, at *1; *Perei*, 2018 WL 1182570, at *1; *Johnson*, 2015 WL 7567483, at *1.

Thus, Defendant urges that "the Court here should follow the reasoning found in the foregoing cases and find that the arbitration provision here 'clearly and unmistakably' provides that the arbitrator, not the Court, should decide whether plaintiff's FCRA claim is covered by the arbitration provision."  Reply at 7:22-26.  Plaintiff responds that because she does "not seek to enforce or challenge the terms, duties, or obligations" of the RISC in her lawsuit, "there can be no finding that the arbitration clause it contains applies to the FCRA claim against Defendant."  Oppo. at 13:19-21.  However, the RISC plainly contemplates that it would cover more than a simple breach of contract dispute directly pertaining to the RISC by expressly stating it extends to claims brought by statute.  Mot. at 23.  Further, the Arbitration Provision explicitly states that "the arbitrability of the claim or dispute . . . shall . . . be resolved by neutral, binding arbitration and not by a court."  Mot. at 23.  Thus, the facts (e.g., the Arbitration Provision) as well as the law warrant having the arbitrator decide the issue of arbitrability.

## C.   Defendant's Motion to Dismiss, or in the Alternative, Stay the Case

Defendant notes that "[a] motion to compel arbitration may be construed as a motion to dismiss for lack of subject matter jurisdiction."  Oppo. at 9:7-10.  In that vein, Defendant argues the Court should dismiss this case because Plaintiff's sole claim is subject to arbitration.  Mot. at 14:27-28.  In the alternative, Defendant argues that the Court should stay the case.  *Id.* at 15:17-19.  Plaintiff admits that courts have discretion to dismiss claims where the parties have agreed to arbitration and no other claims remain.  Oppo. at 22:20-21.  However, Plaintiff argues that because she never agreed to arbitrate the FCRA claims,

-23-

"[t]he request to dismiss or stay the matter is moot." *Id.* at 22:26-28.

"[N]otwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638, 641 (9th Cir. 1988) (affirming the district court's dismissal of one the plaintiff's claims because the parties agreed to submit those claims to arbitration, and no nonarbitrable claims remained in the case); *Gadomski*, 281 F. Supp. 3d at 1020-21 (holding that "because both claims are to be arbitrated, the Court dismisses Plaintiff's claims in favor of arbitration").

Where a defendant moving to compel arbitration also seeks dismissal of the case pursuant to Rule 12(b)(1), the "jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the moving party "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In a factual attack, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Further, in a motion to dismiss, the Court must construe all reasonable inferences in favor of the nonmoving party, *Manzarek*, 519 F.3d at 1031, but has no obligation to draw unreasonable inferences when determining whether the pleading under attack states a plausible claim, *see, e.g.*, *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); *Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 20-CV-01858-EMC, 2020 WL 4923697, at *3 (N.D. Cal. Aug. 21, 2020), *motion to certify appeal denied,* No. 20-CV-01858-EMC, 2020 WL 7227153 (N.D. Cal. Dec. 8, 2020) ("When a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*."). If a defendant advances "a factual attack on subject matter jurisdiction, the defendant may introduce testimony, affidavits, or other evidence to dispute the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Terenkian v. Republic of Iraq*, 694 F.3d

1122, 1131 (9th Cir. 2012) (internal quotations omitted). "Under these circumstances, 'no presumptive truthfulness attaches to plaintiff's allegations.'" *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039.

In the present case, Defendant argues not only that the Court lacks jurisdiction of Plaintiff's FCRA claim as the parties contracted for it to be arbitrated but also that a creditor, like Defendant, "is entitled to make a credit inquiry of an open or closed account." Mot. at 11:22-23. If Defendant's argument is true, Plaintiff's complaint would fail to state a claim for relief as a matter of law. However, Plaintiff argues that "Defendant's arguments on the merits of Plaintiff's FCRA claim and Defendant's defenses, including whether the consumer report inquiry was permissible, should be disregarded. *See, e.g.*, *Teamsters Local 890, infra*, 2012 WL 669900, at *2*." Oppo. at 8:27-28.

"[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T*, 475 U.S. at 649. However, in determining this motion to compel arbitration, the Court also faces a co-pending motion to dismiss, and courts may examine merits on a motion to dismiss.

That Plaintiff would owe a deficiency balance after the sale of the Vehicle was an express term contained in the RISC. Mot. at 23. At no point in Plaintiff's Opposition does she dispute Defendant's factual assertion that had the RISC gone as planned, she was obligated to make payments through February 23, 2021. *Compare* Mot. at 11:19-20 *with* Oppo. Nor could she: Under the plain terms of the RISC, Plaintiff was supposed to make monthly payments of $395.07 until February 23, 2021, as part of her agreement to finance the purchase of her Vehicle ($16,900.00) by agreeing to pay nineteen percent (19%) interest for a total amount owed at the end of the RISC term of **$28,945.04**. Mot. at 20. The record indicates that (1) Plaintiff stopped making payments on November 12, 2018,

Reply at 10:7-8, and (2) when Plaintiff stopped making payments she would have owed at least $10,666.89 (27 [months between November 12, 2018 and February 23, 2021] x $395.07 [amount of monthly payment] = $10,666.89), *id.* at 10:8-11.  This amount excluded late fees and costs the of the sale of the Vehicle.  *See generally* RISC.  Thus, Plaintiff cannot plausibly contend that after surrendering a more than three year old Vehicle, on which she owed in excess of **$10,666.89**, that she expected there would be no deficiency balance.  This is confirmed by the fact that her May 10, 2019 letter, signed by Plaintiff, acknowledging that she knew she owed the amount of **$10,707.00** and requesting an accounting of fees.  *See* Reply at 29.[12]

The FCRA imposes civil liability on any creditor willfully securing a consumer's credit report[13] for an unauthorized purpose.  15 U.S.C. §§ 1681b(f), 1681n(a).  However, the FCRA also expressly authorizes distribution of a credit report to an entity intending "to

---

[12]     Although Plaintiff objects to these exhibits in her Evidentiary Objections submitted after Defendants' Reply Brief, the Court finds consideration of these documents appropriate given Plaintiff's objections do not dispute the authenticity of the exhibits, only that they were not submitted with the original motion.  *See* ECF No. 10.  However, as discussed below, the Court finds these exhibits responsive to Plaintiff's arguments advanced in the Opposition, namely, her declaration in which she disputed owing a deficiency balance.  *See, e.g.*, *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 154, n. 6 (S.D. Cal. 2019) (Bashant, J.) (noting that "[a] district court should not 'rely[ ] on formalistic evidentiary objections,' including objections that evidence is ' "new evidence" submitted in reply' to exclude evidence"); *see also Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (holding that the district should have considered declarations that the district court declined to consider based on adopting a "narrow approach" resulting from "evidentiary formalism in striking those declarations as 'new evidence' submitted in reply").  The Court notes that Plaintiff's Evidentiary Objections assert no basis for exclusion of the contested exhibits other than that they are "new" and were not submitted with the original motion.

[13]     The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, . . . for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit . . . or . . . any other purpose authorized under section 1681b of this title."  15 U.S.C. § 1681a(d)(1)(A) & (C); *see also* Oppo. at 11:25-12:1 (citing 15 U.S.C. § 1681a(d)(1)(A) & (C)).

-26-

use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the . . . collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A); *see also* Oppo. at 12:2-9; *see also* 15 U.S.C. § 1691a(e) (defining a "creditor" as "any person who regularly extends, renews, or continues credit . . . or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."). Although the FCRA refers to "an account" belonging to the consumer, "[t]he text of the FCRA does not distinguish between closed and open accounts." *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1278 (N.D. Cal. 2014) (noting that "[t]he plain language of the FCRA does not prohibit a creditor such as Chase from obtaining a credit report for the purpose of reviewing a closed credit card account") (citing 15 U.S.C. § 1681b(a)(3)(A)). Thus, even if Plaintiff's account was closed, this does not mean Defendant's act of pulling her credit report violated the FCRA. Where a person receives credit from a lender, accumulates debts, and the lender accesses the debtor's credit report to collect on delinquent accounts, the creditor is authorized to use the consumer information under such circumstances. *See, e.g.*, *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) (holding that the assignee of record of the plaintiff's debt did not violate the FCRA by obtaining the plaintiff's creditor report on the original lender's behalf); *Newfield v. City Nat'l Bank, NA*, No. CV163833DSFJPRX, 2017 WL 540944, at *3 (C.D. Cal. Jan. 27, 2017) (citing to *Huertas* for the proposition that Section 1681(b)(3)(A) authorizes the acquisition of a plaintiff's credit report by the purchaser of the plaintiff's debt from the original lender).

As a result, the Court finds that under the facts pled, as well as the documents upon which Plaintiff's sole FCRA claim is based, which are incorporated by reference, not only is Plaintiff's sole FCRA claim implausible under the law, but it is also appropriate for dismissal in light of the Court's decision to grant Defendant's Motion to Compel Arbitration. As a matter of law, the Complaint, when considered along with the RISC and briefs submitted herewith, fails to state a plausible claim for relief. The RISC allowed Defendant to pursue Plaintiff after she surrendered the Vehicle as long as she owed a

deficiency balance.  Mot. at 21-23.  The Court disregards Plaintiff's allegation that her account was closed upon surrendering the Vehicle as unreasonable and implausible in light of the RISC, which did not state that an account would immediately close upon surrender of the Vehicle.  *Id.*  When disregarding this allegation, the remaining facts show that Plaintiff secured a Vehicle loan from Defendant, surrendered her Vehicle, and remained bound by the RISC to pay any deficiency.  As a matter of law, this made Defendant Plaintiff's creditor, and as a creditor, Defendant had every right to pull her credit report.

Having decided that all of Plaintiff's claims are subject to arbitration, the Court is within its discretion to dismiss the complaint under Rule 12(b)(6).  *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004).  Consequently, because both claims are to be arbitrated, the Court dismisses Plaintiff's claims in favor of arbitration.  *See Delgado v. Ally Fin., Inc.*, No. 317CV02189BENJMA, 2018 WL 2128661, at \*6 (S.D. Cal. May 8, 2018) (Benitez, J.) (dismissing claims with prejudice after granting a motion to compel arbitration).  In the absence of a plausible claim under the FCRA, Plaintiff's factual allegations against Defendant for pulling her credit report lack a federal authorizing statute sufficient to invoke federal jurisdiction of her claim.  *See, e.g.*, *Terenkian*, 694 F.3d at 1139 (dismissing the case for lack of federal subject matter jurisdiction after a factual attack on the truth of the allegations creating the basis for federal jurisdiction).  Although absent an arbitration issue, the Court would have discretion to grant leave to amend, the Court finds leave to amend would be improper here because (1) the Court simultaneously concludes that the arbitrator should determine the gateway issue of arbitrability and (2) permitting leave to amend would prove to be an exercise in futility.  *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").  Here, no set of facts could avoid that the gateway issues of arbitration must be determined by the arbitrator, and even if the arbitrator determined Plaintiff's FCRA claim was not subject to the Arbitration Provision, the Court finds the RISC in conjunction with the law prevent Plaintiff from

stating a plausible claim for relief.

Because the Court has dismissed the sole claim in this case, Defendant's request for a stay is denied as moot.  *See*, *e.g.*, *Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) (concluding "that an issue is moot when deciding it would have no effect within the confines of the case itself").

### D.   <u>Plaintiff's Evidentiary Objections</u>

A district court ruling on a motion to compel arbitration must apply a "standard similar to the summary judgment standard of Federal Rule of Civil Procedure 56."  *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018) (Anello, J.) (quoting *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).  In that vein, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  FED. R. CIV. P. 56(c)(2).  However, the court will consider the substance of evidence that would be admissible trial even if the form of the evidence is improper so long as that same evidence may be admissible in another form.  *See*, *e.g.*, *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 922–23 (D. Nev. 2019) (noting that "the 2010 amendments to Federal Rule of Civil Procedure 56 'eliminate[d] th[is] unequivocal requirement' and mandate only that the *substance* of the proffered evidence would be admissible at trial"; declining to "disregard all exhibits for lack of proper authentication because their substance could be admissible at trial").

Plaintiff objects to the Supplemental Declaration of Christine Hatfield and Exhibits C through G, which were not attached to Defendant's the original motion.  ECF No. 10 at 2:11-13.  Plaintiff argues that because she did not have the opportunity to review the exhibits and address them before the Court, they should not be considered by the Court and should be stricken from the record.  *Id.* at 3:8-11.  As stated, Plaintiff does not contend this new evidence cannot be authenticated, lacks foundation, is irrelevant, or represents hearsay evidence.  *See generally* ECF No. 10.

Where a party presents new evidence in a reply brief, the district court should decline

-29-

consideration of the new evidence unless it provides the non-moving party an opportunity to respond to such evidence. *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018) ("Understanding the potential for unfairness inherent in an unusual submission of new factual matter, the practice rules contemplate relief for the opposing party, but such relief is not limited to simply striking the new matter from consideration."). "Mitigation of any unfairness, following objection, may take the form of granting the objecting party leave to file a sur-reply opposition to the new matter." *See id.* (citing, *inter alia*, *SEC v. Sabrdaran*, 252 F. Supp. 3d 866, 889 (N.D. Cal. 2017) (overruling objection to new evidence submitted in reply papers where the court provided the opposing party with "an opportunity to file a supplemental submission responding" to the new evidence)).

Here, however, the Court finds the exhibits to which Plaintiff objects were produced in response to Plaintiff's declaration in which she denied owing a deficiency balance. *See, e.g.*, *Magic Link Garment Ltd. v. ThirdLove, Inc.*, 445 F. Supp. 3d 346, 358, n. 2 (N.D. Cal. 2020) (denying the defendant's motion to strike because "[t]he argument and evidence that plaintiff advanced in its reply is reasonably related to plaintiff's initial argument in its opening brief that defendant accepted the PO 542 bras," and "the challenged evidence was a response to defendant's argument in its opposition that there exists a triable issue concerning its right to revoke its acceptance of the PO 542 bras"). Further, given the Court's application of a "summary judgment type" standard as well as the incorporation by reference doctrine's mandate to consider documents essential to the plaintiff's claims so as to prevent the plaintiff from defeating a motion to dismiss by failing to attach relevant evidence, the Court finds such evidence appropriate for determination. That being said, although the Court considered this evidence, such evidence was not dispositive to the Court's ultimate decision, and as such, neither prejudiced Defendant nor changed the outcome of this order.

### E. <u>Request for Judicial Notice</u>

Defendant requests that the Court take judicial notice of its small claims court case. ECF No. 8 at 15, ¶ 8 (citing to Exhibit F). Rule 201(b) of the Federal Rules of Evidence

allows courts, at any stage of proceeding, to take judicial notice of (1) facts not subject to reasonable dispute and "generally known within the trial court's territorial jurisdiction" and (2) adjudicative facts, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See also Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290, fn. 1 (9th Cir. 1996) (taking judicial notice of court records); *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 746 (8th Cir. 1996) (holding that the district court did not err by taking judicial notice of pleadings in earlier related proceedings).  As a judicial record, the Small Claims Complaint is an appropriate item for judicial notice.  As such, the Court grants Defendant's Request for Judicial Notice.

## V.   **CONCLUSION**

For the above reasons, the Court rules as follows:

1.   Defendant's Motion to Compel Arbitration is **GRANTED**.

2.   Defendant's Motion to Dismiss is **GRANTED *WITH PREJUDICE***.

3.   Defendant's Motion to Stay is **DENIED** as moot.

4.   Plaintiff's Evidentiary Objections are **OVERRULED**.

5.   Defendant's Request for Judicial Notice is **GRANTED**.

6.   The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**

DATED:     February 4, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge

3:20-cv-00913-BEN-BLM